July 26, 2017

**VIA ECF & EMAIL** (SullivanNYSDChambers@nysd.uscourts.gov)

Hon. Richard J. Sullivan
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Room 2104
New York, New York 10007

Dear Judge Sullivan:

      Pursuant to the Court's Order dated Thursday, July 6, 2017, Plaintiff Jeehoon Park ("Mr. Park") and Defendants Skidmore, Owings & Merrill LLP ("SOM"); Tower 1 Joint Venture LLC ("T1JV"); WTC Tower 1 LLC ("WTC Tower 1"); Tishman Construction Corp. ("Tishman"); and Legends OWO, LLC ("Legends") (collectively, "Defendants") jointly submit this letter in preparation for the initial conference scheduled for 9:30 a.m. on August 2, 2017.

**I.  Nature of the Action and Principle Defenses Thereto**

      *Plaintiff's Statement*. Mr. Park is a practicing architect in metro Atlanta. In 1999, Mr. Park completed two years of work in designing a 122-story building as the thesis for his Master's degree in Architecture (referred to herein as "Cityfront '99"). One of his thesis advisors worked as an associate partner at SOM, which describes itself as one of the most influential architectural firms in the world. Another senior SOM partner met with Mr. Park and reviewed Cityfront '99. SOM later provided architectural services for One Word Trade Center, which opened in November 2014, about 2 ½ years before Plaintiff filed this action. As the side-by-side photographs show, One WTC is strikingly similar to Mr. Park's copyrighted Cityfront '99. Shortly before filing this action, Mr. Park learned that his architectural school also noticed the similarity between Cityfront '99 and One WTC. The book *High-Rise and Long-Span Research at Illinois Institute of Technology*, published in 2010 by Mr. Park's alma mater, stated, "Jee-Hoon Park's thesis explores the ostensibly simple geometry of a tower of square plan at the base and an inscribed, rotated square at the top. . . . This scheme prefigured the closely related SOM design for One World Trade Center" (p. 73).



Cityfront '99            One WTC

      In this action, Mr. Park brings claims for copyright infringement against all Defendants in connection with the design, construction, and leasing of One World Trade

1

Center ("One WTC"), as well as activities of Legends in operating One World Observatory (e.g., by selling figurines based on One WTC). Mr. Park also brings claims against SOM for false advertising and reverse passing off under the Lanham Act. For example, SOM has falsely advertised and described its architectural services by claiming that SOM designed One WTC without disclosing that the One WTC design is based on Mr. Park's architectural efforts. Mr. Park also brings a claim against SOM for violating the Digital Millennium Copyright Act by providing false copyright management information (e.g., false authorship information) in connection with displays of One WTC.

Mr. Park's claims are timely. One WTC was completed and opened for business in November 2014, less than three years ago. The Supreme Court has held that "the separate-accrual rule attends the copyright statute of limitations." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1969 (2014). Thus, "[e]ach wrong gives rise to a discrete 'claim' that 'accrue[s]' at the time the wrong occurs," which means that "each infringing act starts a new limitations period." *Id.* Therefore, at a minimum, Mr. Park is entitled to recover for acts of infringement that occurred within three years of his complaint, which includes acts of copyright infringement by each Defendant.

Moreover, Mr. Park's Lanham Act claims are not precluded by the Copyright Act or *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003). *Dastar* did not address false-advertising claims, and other courts have permitted claims similar to Mr. Park's false-advertising claim to proceed. Neither does *Dastar* preclude Mr. Park's reverse-passing-off claim. While *Dastar* addressed a claim regarding the origin of tangible goods (video tapes), Mr. Park claims that SOM has falsely designated the origin of architectural services. The Seventh Circuit permitted an architectural firm's similar reverse-passing-off claim to proceed. *See M. Arthur Gensler Jr. & Assocs. v. Strabala*, 764 F.3d 735, 737-39 (7th Cir. 2014). When SOM has sought to enforce its own intellectual-property rights, it has similarly joined false-advertising and reverse-passing-off claims with copyright-infringement claims. *See Skidmore, Owings & Merrill LLP v. Jay Marshall Strabala*, No. 11-cv-3906 (MGC) (S.D.N.Y.), Dkt. 1 at 14-18.

Under the Copyright Act, Mr. Park is entitled to recover his actual damages due to Defendants' copyright infringement, as well as Defendants' profits attributable to their infringement. For SOM and Tishman, this includes at least their profit from the design and construction of One WTC. For T1JV, damages include, for example, the value of One WTC minus construction costs, as well as profit from leasing One WTC. For WTC Tower 1, damages include at least profit from leasing space in One WTC. For Legends, damages include at least profit from selling products (e.g., figurines) infringing Mr. Park's copyrighted work, as well as advertising and promoting ticket sales to One World Observatory at One WTC using images, including the logo for One World Observatory, that copy Cityfront '99. Mr. Park is also entitled to his actual damages and SOM's profits attributable to its violation of the DMCA, as well as his damages and SOM's profits attributable to its violations of the Lanham Act for false advertising and unfair competition (e.g., profits SOM has realized from projects it obtained after falsely characterizing its architectural services in connection with One WTC).

*Defendants' Statement*.   Defendants believe that Mr. Park's complaint should be dismissed for the reasons set forth in their Rule 2.A letter (the "Letter").  We refer to that Letter (Dkt. [35]) for a full recitation of Defendants' arguments on that motion including the statute of limitations bar, as well as the defects in Mr. Park's tag-along Lanham Act and DMCA claims. Assuming *arguendo* that Mr. Park's complaint can survive dismissal, it is clear even at this early

stage of litigation that his opportunistic copyright infringement claims (on which all of his other claims rest) are completely frivolous on the merits.  In order to prevail on those claims, Mr. Park must demonstrate that Defendants (1) "actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectable elements of plaintiff's."  *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010).  The Copyright Act defines an "architectural work" as "the design of a building," which "includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features" (17 U.S.C. §101) and the Court must compare the works at issue as a whole.

Mr. Park will not be able to establish that Defendants actually copied Cityfront '99.  Mr. Park can establish copying "by showing that the defendant had access to the plaintiff's work and that the works are similar enough to support an inference that the defendant copied the plaintiff's work."  *Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F.3d 119, 123 (2d Cir. 1994).  The evidence will disprove Mr. Park's allegations that SOM had access because the only SOM employees alleged to have seen Cityfront '99 worked in SOM's Chicago office and had no involvement in the New York-based development of 1 WTC.

 

**Cityfront '99**      **1 WTC**

To create the illusion of similarity, Mr. Park relies heavily on highly misleading comparative photographs of part of the "skin" of the buildings, which do not accurately convey the works as a whole.  Viewing the designs for Cityfront '99 and 1 WTC as a whole as mandated under the governing standard, it is clear that the works are too dissimilar either to support an inference that Defendants' copied Mr. Park (probative similarity) or to establish substantial similarity between protectable elements of Mr. Park's work.   Based on an initial review of Mr. Park's thesis for Cityfront '99 and higher resolution photographs, Defendants have preliminarily identified a minimum of 25 major differences between the protectable elements of the two works, many of which are readily apparent even from the small photographs in this letter.  For instance, although purposefully excised from Mr. Park's photographs, the exterior of Cityfront '99 has a gridded look, created by two glass window materials that are surrounded by aluminum panel cladded concrete grid.  In contrast, the exterior of 1 WTC was designed to make the building resemble a smooth glass obelisk cut out of one, solid material.  In short, 1 WTC appears as a seamless and reflective surface that is totally antithetical to the pock-marked surface of Cityfront '99.  Another obvious difference is that 1 WTC has the classical formal elements of a podium base, shaft and crown:  the square, tall, non-tapered base, the reflective, all-glass tapered mid-section of the tower, and the landmark spire atop three distinctive rings, which divide the building into three distinctive sections.  In contrast, Cityfront '99 has no crown or base;  rather, the building's taper bottoms out into a single story shopping arcade that incorporates an asymmetrical two-building annex.   The prevalence of these dissimilarities – and many more like them – lead to the inescapable conclusion that the only similarities between the two buildings at issue are similarities between functional features and elements common to the design of modern skyscrapers generally, which are not subject to copyright protection.  *See e.g.*, *Zalewski v. Cicero Builder Dev. Inc.*, 754 F.3d 95, 106 (2d Cir.

2014) (no substantial similarity if the only similarities between the works consist of "recognized styles" attributable to "modern high-rise office buildings" or to "elements attributable to building codes, topography … or engineering necessity").

Mr. Park's infringement claims also fail because Defendants will easily establish that the design of 1 WTC was conceived and executed entirely independently from Mr. Park's work. "Independent creation is a defense to copyright infringement." *Zalewski*, 754 F.3d at 101. Mr. Park freely admits that the designs of Cityfront '99 and 1 WTC are both based on the "simple geometry of a tower of square plan at the base and an inscribed, rotated square at the top." The




very same "simple geometry" has been used by architects long before Mr. Park completed his thesis in 1999. Foremost among them is David Childs, the primary architect of 1 WTC, who has spent his entire career exploring the interplay between geometry and architecture which came to fruition in 1 WTC. The progression of buildings in the adjacent picture demonstrates how "chamfering" was used long before Mr. Park conceived of Cityfront '99: (left to right) a lighthouse built in 1944, a 1981 Harry Weese design for a tower in Chicago, a 1994 David Childs' design for a Beijing skyscraper, Robert A.M. Stern's 2000 design for an office tower and the 2005 design for 1 WTC. Far from being original to Mr. Park, similar geometric patterns also formed the basis of designs for skyscrapers by other students in his architect school class below:



Left: three designs by Park's classmates ;

Below and right: models designed by SOM that evolved into 1WTC design

Defendants will also demonstrate that 1 WTC evolved independently from scores of designs, a fraction of which are represented by the models visible in the two rightmost photographs above.

For all the reasons set forth above, even if this action is not dismissed on the pleadings as it should be, Defendants intend to move as quickly as possible for summary judgment and to seek prevailing party attorneys' fees pursuant to 17 U.S.C. § 505, both on their motion and, if necessary, on the merits.

## II.   Basis for Subject-Matter Jurisdiction and Venue

As Mr. Park's claims arise under the Copyright Act, 17 U.S.C. § 101 *et seq.*, the Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq.*, and the Lanham Act, 15 U.S.C. § 1051 *et seq.*, this Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b). Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b), (c), and (d), and 1400(a).

**III.  Outstanding Motions/Motion Requests**

On July 17, 2017, Defendants filed a pre-motion letter requesting leave to file a motion to dismiss Mr. Park's claims under Rule 12(b)(6). Mr. Park filed his response to Defendants' letter on July 20. The Court indicated it will address Defendants' pre-motion letter at the August 2 initial conference.

**IV.  Discovery**

No discovery has taken place to date. Additionally, the parties state the following:

*Plaintiff's Statement.* In order to facilitate settlement discussions, Mr. Park requests (1) any communications or documents relating or referring to Mr. Park or Cityfront '99; and (2) Defendants' revenue and gross profit relating to One WTC. Plaintiff opposes Defendants' request to stay discovery pending their proposed motion to dismiss because, inter alia, Defendants' proposed motion is futile. Plaintiff also opposes bifurcating discovery into liability and damages phases, as it would likely create unnecessary complication and disputes, extend the overall length of discovery, and lead to potential overlap (e.g., between scope and timing of infringing activity, willfulness, and damages-related information).

*Defendants' Statement*. As set forth in greater detail in the parties' joint scheduling report, Defendants have requested a stay of discovery until the Court disposes of Defendants' motion to dismiss.  If the Court declines to stay all discovery, Defendants request that the case be bifurcated into liability and damages phases.  In any event, Plaintiff has no entitlement to discover all revenue and gross profit relating to 1 WTC.  Defendants do not believe there is a need for any discovery before mediation.

**V.  Prior Settlement Discussions**

The parties have conducted no settlement discussions to date.

**VI.  Estimated Length of Trial**

The parties estimate that a jury trial of this matter will last five (5) days.

**VII.  Other Information Useful to the Court**

The parties are not aware of further information useful to the Court at this time, but stand ready to provide any information the Court requests.

Respectfully and jointly submitted,

| | |
|---|---|
| /s/*Daniel A. Kent* | /s/*Marcia B. Paul* |
| Daniel A. Kent | Marcia B. Paul |
| Kent & Risley LLC | Davis Wright Tremaine LLP |
| Counsel for Plaintiff | Counsel for Defendants |