UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

----------------------------------------------------------- x
JEEHOON PARK,                                               :
                                                           :       Civ. No. 1:17-cv-4473 (RJS)
                    Plaintiff,                              :
                                                           :
          - against -                                      :
                                                           :
SKIDMORE, OWINGS & MERRILL LLP,                            :
TISHMAN CONSTRUCTION CORP.,                                 :
TOWER 1 JOINT VENTURE LLC, WTC                              :
TOWER 1 LLC, and LEGENDS OWO, LLC,                          :
                                                           :
                    Defendants.                            :
----------------------------------------------------------- x

# DEFENDANTS' MEMORANDUM OF LAW
## <u>IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT</u>

**DAVIS WRIGHT TREMAINE** LLP

Marcia B. Paul
John M. Browning

1251 Avenue of the Americas
21st Floor
New York, NY 10020
(212) 603-6473
E-mail:marciapaul@dwt.com
          jackbrowning@dwt.com

## <u>TABLE OF CONTENTS</u>

I.    BACKGROUND ....................................................................................................2

II.   APPLICABLE STANDARD...................................................................................4

III.  THE COMPLAINT FAILS TO STATE A COGNIZABLE CLAIM FOR EITHER
      DIRECT COPYRIGHT INFRINGEMENT OR SECONDARY LIABILITY ..................5

      A.    Copyright Infringement of Architectural Works ......................................5

      B.    The Statute of Limitations Bars Park's Claims that the Design and
            Construction of 1 WTC Infringed his Copyright in Cityfront '99..........9

      C.    Park Cannot State a Claim for Copyright Infringement Based on the Acts
            Alleged To Have Occurred During the Three Year Lookback Period ................12

            1.    The Construction Allegations ...................................................14

            2.    The Distribution Allegations....................................................15

            3.    The Pictorial Allegations .........................................................17

            4.    Alternatively, the Loading of Architectural Documents into
                  Temporary Computer Memory is a Fair Use ...............................19

            5.    Alternatively, the Building Replicas are a Fair Use ..................22

      D.    Park's Claims of Contributory and Vicarious Liability Fail..................23

IV.   PLAINTIFF'S LANHAM ACT CLAIMS FAIL TO STATE CLAIMS FOR RELIEF ...24

      A.    Reverse Passing Off...............................................................................25

      B.    False Advertising ...................................................................................27

V.    PLAINTIFF'S DMCA CLAIM FAILS TO STATE A CLAIM FOR RELIEF ...............28

4826-9061-9723v.6 0067591-000006

# **TABLE OF AUTHORITIES**

**Cases**

*Agence France Presse v. Morel,*
    769 F. Supp. 2d 295 (S.D.N.Y. 2011)..............................................................30

*Antidote Int'l Films, Inc. v. Bloomsbury Publ'g, PLC,*
    467 F. Supp. 2d 394 (S.D.N.Y. 2006)..........................................................26, 28

*Arthur Ruttenberg Homes, Inc. v. Brentwood Custom Homes, Inc.,*
    No. 6:05-CV-1350-Orl-22 DAB (M.D. Fla. Feb. 2, 2006).................................27

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)....................................................................................4, 11

*Ashley v. Eastchester Police Dep't,*
    2012 WL 234399 (S.D.N.Y. Jan. 6, 2012) .........................................................4

*Attia v. Soc'y of N.Y. Hosp.,*
    201 F.3d 50 (2d Cir. 1999)...............................................................................7

*Beckwith Buildings, Inc. v. Depietri,*
    2006 WL 264518 (D.N.H. Sept. 15, 2006).......................................................27

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)........................................................................................4

*Bill Graham Archives v. Dorling Kindersley, Ltd.,*
    448 F.3d 605 (2d Cir. 2006)............................................................................22

*Blade Room Grp. Ltd. v. Facebook, Inc.,*
    219 F. Supp. 3d 984, 993-94...........................................................................26

*Brown v. Stroud,*
    2011 WL 2600661 (N.D. Cal. June 30, 2011) ...................................................30

*Brownmark Films, LLC v. Comedy Partners,*
    682 F.3d 687 (7th Cir. 2012) ...........................................................................5

*Builders Mut. Ins. Co. v. Donald A. Gardener Architects, Inc.,*
    856 F. Supp. 2d 773 (D.S.C. 2012)..................................................................18

*Campbell v. Acuff-Rose Music, Inc.,*
    510 U.S. 569 (1994)...................................................................20, 21, 22, 23

*Community for Creative Non-Violence v. Reid,*
    490 U.S. 730 (1989).......................................................................................29

ii

*Complex Sys., Inc. v. ABN Amro Bank N.V.*,
  979 F. Supp. 2d 456 (S.D.N.Y. 2013)...................................................................................10

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
  539 U.S. 23 (2003)................................................................................................. *passim*

*Davis v. Gap, Inc.*,
  246 F.3d 152 (2d Cir. 2001).......................................................................................22

*Demetriades v. Demetriades*,
  690 F. Supp. 289 (S.D.N.Y. 1988)...........................................................................23

*Elektra Entm't Grp., Inc. v. Barker*,
  551 F. Supp. 2d 234 (S.D.N.Y. 2008)................................................................15, 16

*Enzo Biochem, Inc. v. Amersham PLC*,
  981 F. Supp. 2d 217 (S.D.N.Y. 2013).......................................................................26

*Faulkner Press, L.L.C. v. Class Notes, L.L.C.*,
  756 F. Supp. 2d 1352 (N.D. Fla. 2010)....................................................................29

*Faulkner v. National Geographic Enters., Inc.*,
  409 F.3d 26 (2d Cir. 2005).........................................................................................23

*Gensler v. Strabala*,
  764 F.3d 735 (7th Cir. 2014) ....................................................................................27

*Harper & Row Publishers, Inc. v. Nation Enters.*,
  471 U.S. 539 (1985)...................................................................................................22

*IQ Grp. Ltd. v. Wiesner Publ'g, LLC*,
  409 F. Supp. 2d 587 (D.N.J. 2006) ...........................................................................30

*Island Software & Computer Serv. v. Microsoft Corp.*,
  413 F.3d 257 (2d Cir. 2005).......................................................................................10

*Javelin Invs., LLC v. McGinnis*,
  2007 WL 781190 (S.D. Tex. Jan. 23, 2007) .............................................................14

*Jones v. Bock*,
  549 U.S. 199 (2007).....................................................................................................4

*Kelly v. L.L. Cool J.*,
  145 F.R.D. 32 (S.D.N.Y. 1992) ................................................................................13

*Kitchen & Bath Concepts of Pittsburgh, LLC v. Eddy Homes*,
  2016 WL 7404559 (W.D. Pa. Dec. 22, 2016)..........................................................18

4826-9061-9723v.6 0067591-000006

*Landrau v. Solis-Betancourt*,
    554 F. Supp. 2d 102 (D.P.R. 2007)....................................................................18

*Larkin Grp., Inc. v. Aquatic Design Consultants, Inc.*,
    323 F. Supp. 2d 1121 (D. Kan. 2004)................................................................27

*Latin Am. Music Co. v. Spanish Broad. Sys., Inc.*,
    232 F. Supp. 3d 384 (S.D.N.Y. 2017), *appeal docketed*,
    No. 17-1953 (2d Cir. June 21, 2017) ...............................................................10

*Leicester v. Warner Bros.*,
    232 F.3d 1212 (9th Cir. 2000) .....................................................................7, 18

*Lipton v. The Nature Co.*,
    71 F.3d 464 (2d Cir. 1995)........................................................................25, 26

*Logan Developers, Inc. v. Heritage Bldgs., Inc.*,
    2013 WL 5460757 (E.D.N.C. Sept. 30, 2013)..................................................26

*Looney Ricks Kiss Architects, Inc. v. Bryan*,
    2010 WL 5175171 (W.D. La. Dec. 7, 2010) ....................................................16

*Mahan v. Roc Nation, LLC*,
    2015 WL 1782095 (S.D.N.Y. Apr. 15, 2015),
    *aff'd*, 634 F. App'x 329 (2d Cir. 2016)...........................................................10

*Marvullo v. Gruner & Jahr*,
    105 F. Supp. 2d 225 (S.D.N.Y. 2000)..............................................................13

*Morgan v. Hawthorne Homes, Inc.*,
    2009 WL 101476 (W.D. Pa. Apr. 14, 2009)....................................................18

*Palmer Kane LLC v. Scholastic Corp.*,
    2013 WL 709276 (S.D.N.Y. Feb 27, 2013)......................................................13

*Palmetto Builders & Designers v. UniReal, Inc.*,
    342 F. Supp. 2d 468 (D.S.C. 2004)..................................................................16

*Perfect 10 v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) ...................................................................21, 22

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
    134 S. Ct. 1962 (2014) ........................................................................ *passim*

*Psihoyos v. John Wiley & Sons, Inc.*,
    748 F.3d 120 (2d Cir. 2014)...............................................................................8

iv

*R.M.S. Titanic, Inc. v. Haver*,
   171 F.3d 943 (4th Cir. 1999) ........................................................................19

*Reyher v. Children's Television Workshop*,
   533 F.2d 87 (2d Cir. 1976)............................................................................23

*Richard J. Zitz, Inc. v. Pereira*,
   232 F.3d 290 (2d Cir. 2000)......................................................7, 11, 12, 14, 19

*Shapiro Bernstein & Co. v. H.L. Green Co.*,
   316 F.2d 304 (2d Cir. 1963)........................................................................23

*Sorenson v. Wolfson*,
   96 F. Supp. 3d 347 (S.D.N.Y. 2015)....................................................11, 18, 19

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
   547 F.3d 406 (2d Cir. 2008)........................................................................4, 5

*TCA TV Corp. v. McCollum*,
   839 F.3d 168 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2175 (2017) ............................5

*Textile Secrets Int'l, Inc. v. Ya-Ya Brand Inc.*,
   524 F. Supp. 2d 1184 (C.D. Cal. 2007) ..........................................................30

*Thomas M. Gilbert Architects, P.C. v. Accent Builders & Developers LLC*,
   629 F. Supp. 2d 526 (E.D. Va. 2008), *aff'd*, 377 F. App'x 303 (4th Cir. 2010)....................30

*TrafFix Devices, Inc. v. Marketing Displays, Inc.*,
   532 U.S. 23 (2001)....................................................................................25

*Waldman Publ'g Corp. v. Landoll, Inc.*,
   43 F.3d 775 (2d Cir. 1994)..........................................................................26

*Wellnx Life Sciences Inc. v. Iovate Health Sciences Research Inc.*,
   516 F. Supp. 2d 270 (S.D.N.Y. 2007)...........................................................26

*Williams v. A&E TV Networks*,
   122 F. Supp. 3d 157 (S.D.N.Y. 2015)...........................................................23

*Wolf v. Travolta*,
   167 F. Supp. 3d 1077 (C.D. Cal. 2016) .........................................................19

*Zalewski v. Cicero Builder Dev. Inc.*,
   754 F.3d 95 (2d Cir. 2014)..........................................................................30

*Zitz v. Pereira*,
   119 F. Supp. 2d 133 (E.D.N.Y. 1999), *aff'd on other grounds*,
   *Richard J. Zitz, Inc. v. Pereira*, 225 F.3d 646 (2d Cir. 2000)..................................10

4826-9061-9723v.6 0067591-000006

*Zuma Press, Inc. v. Getty Images (U.S.) Inc.*,
    2017 WL 2829517 (S.D.N.Y. June 29, 2017) ......................................................28

**Statutes**

15 U.S.C. § 1117(a) ......................................................................................................30

15 U.S.C. § 1125(a) ................................................................................................24, 27

17 U.S.C. § 101 ...............................................................................................6, 17, 29

17 U.S.C. § 102(5) ..........................................................................................................6

17 U.S.C. § 106 ........................................................................................................8, 15

17 U.S.C. § 106(2) ..........................................................................................................6

17 U.S.C. § 106(3) ........................................................................................................16

17 U.S.C. § 106(5) ........................................................................................................15

17 U.S.C. § 107 ............................................................................................................21

17 U.S.C. § 120 ..............................................................................................................6

17 U.S.C. § 120(a) .......................................................................................11, 17, 18, 19

17 U.S.C. § 120(b) ..............................................................................................7, 14, 15

17 U.S.C. § 205(c) ........................................................................................................10

17 U.S.C. § 501 ............................................................................................................15

17 U.S.C. § 505 ............................................................................................................30

17 U.S.C. § 507(b) ..........................................................................................................7

17 U.S.C. § 1201(2) ......................................................................................................30

17 U.S.C. § 1202 ..........................................................................................................31

17 U.S.C. § 1202(a) ................................................................................................28, 29

37 C.F.R. § 202.11(d)(3) ..............................................................................................11

**Rules**

Fed. R. Civ. P. 8 ..........................................................................................................13

Fed. R. Civ. P. 12(b)(6) ...........................................................................................1, 4, 5

Fed. R. Evid. 201 ...................................................................................................................5

**Other Authorities**

H.R. Rep. 101-735, 1990 U.S.C.C.A.N. 6935 (1990) ....................................................7

4 *Nimmer on Copyright*, § 12(a).10 [C][1] n.140...................................................29

4 *Nimmer on Copyright*, § 12(a).10 [C][2] ............................................................30

4 *Nimmer on Copyright*, § 13.05[G]........................................................................21

2 *Patry on Copyright* § 3:111 ..................................................................................16

Defendants Skidmore, Owings & Merrill LLP ("SOM"), Tower 1 Joint Venture LLC ("T1JV"), WTC Tower 1 LLC ("WTC Tower 1"), Tishman Construction Corp. ("Tishman"), and Legends OWO, LLC ("Legends") submit this memorandum of law in support of their motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the amended complaint of plaintiff Jeehoon Park ("Park").

Plaintiff complains that SOM's design of 1 World Trade Center ("1 WTC") infringes his 1999 graduate student project for architectural school ("Cityfront '99"). Approximately eighteen years after he completed that design, over a decade after the design for 1 WTC was publicly revealed with much fanfare, eleven years after construction began on that skyscraper, and more than five years since the structure was "substantially completed", *i.e.*, topped out, he brings claims for copyright infringement of his architectural work and other federal claims seeking credit as the architect who designed 1 WTC. He alleges that SOM copied Cityfront '99 in designing and constructing 1 WTC. SOM will establish in this litigation, if necessary, that that is most certainly not the case: not only did defendants not have access to Park's design, but any similarities are superficial and/or functional only and appeared in earlier tall building designs including earlier SOM designs; and to the extent there are any protectable similarities, they were the product of independent creation. But this upfront motion turns on the inherently incredible proposition that it took Park over a decade to figure out that one of the most well-publicized buildings in the world infringed his student project. The statute of limitations for copyright infringement is three years for good reason: no one should be able to come forth over a decade later with a complaint in these circumstances.

Plaintiff strains to avoid this statute of limitations hurdle, but his efforts fail to circumvent the clear congressional mandate, underscored by Justice Ginsburg in *Petrella v.*

*Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 (2014), blocking precisely these kinds of untimely suits.  Pleading claims for violation of § 43(a) of the Lanham Act predicated on alleged false attribution of authorship are barred by yet another Supreme Court decision, *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), which rejects wholesale the notion that this statute can, in these circumstances, work an end-run around the limitations bar.

As set forth below, this action should be dismissed in its entirety, with prejudice.

## I.     BACKGROUND

The first amended complaint in this action, filed on August 18, 2017 ("FAC"), sets forth twelve purported claims for relief, all centered around Park's claim that the design of 1 WTC infringes a 1999 project he completed as a graduate student in architecture school titled "A Multi-use High-rise Concrete Building – Chicago's City Front Center" ("Cityfront '99").  FAC ¶ 2.  He alleges that SOM had access to that design through various SOM employees in its Chicago office and because his model was allegedly displayed for a while outside and in the lobby of the College of Architecture at the Illinois Institute of Technology in Chicago ("IIT"), from which he graduated.  *Id.*, ¶¶ 2, 17-21.  Park registered the architectural design of his building with the Copyright Office as an architectural work on May 9, 2017.  FAC Ex. 2.  He alleges that 1 WTC copies Cityfront '99 (FAC ¶ 4), apparently based upon a (highly misleading) profile of the skin of the building, *i.e.*, the exterior of it (*id.* ¶¶ 4-6), but does not allege infringement of the architectural plans for his building and does not claim to have registered them.

The complaint alleges that: "SOM's website identifies SOM as one of the largest and most influential architectural, interior design, engineering and urban planning firms in the world" (*id.* ¶ 27); SOM has heavily publicized its work on 1 WTC presenting itself and SOM architect

David Childs as the designers of that building (*id.* ¶ 29, 60); SOM has never credited Park "as the author of the work that SOM copied in its design for 1 WTC" (*id.* ¶ 63); and SOM has profited from its work in design and construction (*id.* ¶ 65), as well as from the publicity and recognition it has consequently received as the consequence (*id.* ¶ 66). The complaint also names as defendants Tishman, identified as the construction manager which "built" 1 WTC (*id.* ¶ 68); Tower 1 Joint Venture LLC, alleged to be the "developer" of 1 WTC (*id.* ¶ 69) and its subsidiary, WTC Tower 1 LLC, alleged to have leased space in 1 WTC (*id.* ¶ 72) and used plans for WTC in its leasing materials (*id.* ¶ 90); and Legends, which allegedly sells products that "copy Cityfront '99" including three dimensional models, tickets, and advertising for 1 WTC. *Id.* ¶¶ 91-93.

**No place in the complaint is it alleged when Park claims to have discovered the alleged copyright infringement and no reason is given for why he waited so many years to assert his claims.** The complaint does admit that the similarity between the two projects was noted in a book published by IIT in 2010 (*id.* ¶ 6); SOM unveiled the design for what became 1 WTC in June of 2005 (*id.* ¶ 30); and "SOM has received a great deal of publicity for its work on 1 WTC (*id.* ¶ 59). The court can also take judicial notice of the facts that SOM registered its design for 1 WTC with the Copyright Office in June 2005; it was widely reported in the press that plans for the current design of 1 WTC were released in June of 2005; construction began in April of 2006; the structure topped out in August of 2012; and the building was completed by May 22, 2014.[1]

Plaintiff pleads twelve claims for relief, including claims for direct copyright infringement against SOM (first claim), WTC Tower 1 LLC (fifth claim), Legends (sixth claim) and Tishman (twelfth claim), and claims for secondary liability for copyright infringement

---

[1] *See* Declaration of Marcia B. Paul, dated September 8, 2017 ("Paul Decl.") Exhibits B-J (copyright registration for 1 WTC and articles).

against WT 1JV (seventh claim), WTC Tower 1 (eighth claim), and SOM (ninth and tenth claims). He also pleads claims against SOM for false advertising, reverse passing off under the Lanham Act (second and third claims) and violation of the Digital Millennium Copyright Act ("DMCA") (eleventh claim). As set forth below, none of those claims state a claim upon which relief may be granted.

## II.     APPLICABLE STANDARD

Although a court must accept well-pleaded *factual* allegations as true for purposes of a Rule 12(b)(6) motion, allegations that are simply legal conclusions "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). Under this governing standard, a plaintiff must affirmatively provide "enough facts to state a claim to relief that is *plausible* on its face," rather than merely possible. *Id.* at 570 (emphasis added); *Iqbal*, 556 U.S. at 678-79.

A court may grant a motion to dismiss an untimely action when the complaint reveals that plaintiff's allegations are time-barred. *See*, *e.g.*, *Jones v. Bock*, 549 U.S. 199, 215 (2007) ("A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief. If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim ….").[2]

---

[2] *See also Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425-26 (2d Cir. 2008) (Rule 12(b)(6) motion to dismiss "was a proper means to plead that the claim should be dismissed as untimely") (citations omitted); *Ashley v. Eastchester Police Dep't*, 2012 WL 234399, at *2-3

The general rule on a 12(b)(6) motion is that the court may not look outside the four corners of the complaint, but the Second Circuit has "acknowledged that the court 'may also consider matters of which judicial notice may be taken.'" *Staehr*, 547 F.3d at 425-26 (citation omitted). Indeed, Rule 12(b)(6) dismissal of untimely claims is appropriate when "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are [time] barred as a matter of law". *Id*. at 425 (emphasis & citation omitted). This court may take judicial notice of landmark dates in the construction of 1 WTC because this information is both "generally known within the trial court's territorial jurisdiction" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. It is particularly straightforward to take judicial notice of news articles containing photographs of 1 WTC in this context, since these dated photographs offer a self-evidently reliable snapshot of the building's design and the progress of its construction at given points in time.

Although fair use is mixed question of law and fact, it too may be decided on a 12(b)(6) motion. *See TCA TV Corp. v. McCollum*, 839 F.3d 168, 178 (2d Cir. 2016) ("fair use [may be] so clearly established by a complaint as to support dismissal of a copyright infringement claim" on the pleadings), *cert. denied*, 137 S. Ct. 2175 (2017); *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (granting 12(b)(6) motion on fair use grounds).

### III.   THE COMPLAINT FAILS TO STATE A COGNIZABLE CLAIM FOR EITHER DIRECT COPYRIGHT INFRINGEMENT OR SECONDARY LIABILITY

#### A.   Copyright Infringement of Architectural Works

Before probing the deficiencies in Park's pleading, some basic principles of copyright

---

(S.D.N.Y. Jan. 6, 2012) (dismissing claims as barred by the statute of limitations on a Rule 12(b)(6) motion).

law frame the analysis.  First, as noted above, Park has registered an architectural work under the

Architectural Works Copyright Protection Act ("AWCPA").  Congress enacted the AWCPA in

1990 to extend copyright protection to buildings themselves; architectural plans were already

protected as pictorial, graphic, and sculptural works under § 102(5) of the Copyright Act.  As

part of the AWCPA, the Copyright Act was amended to offer limited protection for architectural

works.  Among the statutory additions was the definition of an "architectural work" which is as

follows:

> [T]he design of the building as embodied in any tangible medium of expression,
> including a building, architectural plans, or drawings.  The work includes the
> overall form as well as the arrangement and composition of spaces and elements
> in the design, but does not include individual standard features.

17 U.S.C. § 101.  The AWCPA also engrafted statutory exemptions to the scope of exclusive

rights granted to the owners of architectural works in § 120 of the Copyright Act, as follows:

> (a) PICTORIAL REPRESENTATIONS PERMITTED.—
> The copyright in an architectural work that has been constructed does not include
> the right to prevent the making, distributing, or public display of pictures,
> paintings, photographs, or other pictorial representations of the work, if the
> building in which the work is embodied is located in or ordinarily visible from a
> public place.
>
> (b) ALTERATIONS TO AND DESTRUCTION OF BUILDINGS.—
> Notwithstanding the provisions of section 106(2), the owners of a building
> embodying an architectural work may, without the consent of the author or
> copyright owner of the architectural work, make or authorize the making of
> alterations to such building, and destroy or authorize the destruction of such
> building.

As the legislative history demonstrates, Congress found it necessary to recognize special limits

on the exclusive rights available to the owner of an architectural work because buildings possess

unique characteristics that are not found in other forms of authorship.  For example, Congress

provided broad immunity for any person who makes, distributes or displays publicly any

"pictorial representation" of a constructed building that is "located in or ordinarily visible from a

6

public place" because "[a]rchitecture is a public art form and is enjoyed as such."  H.R. Rep. 101-735, 1990 U.S.C.C.A.N. 6935, 6952-53 (1990).  Congress also cited the fact that architectural works, "unlike other forms of subject matter[,] are habitable" as a justification for the § 120(b) exception enabling alteration of architectural works.  *Id*. at 6954.

Although "[i]n general, architectural works are subject to the same standards that apply to other copyrightable works," *Attia v. Soc'y of N.Y. Hosp.*, 201 F.3d 50, 53 n.3 (2d Cir. 1999) (citation omitted), the text of the AWCPA and its legislative history both make clear that copyright law respects and must adapt to intrinsic differences between a commercial skyscraper and more typical forms of copyrightable expression, like books.  *See Leicester v. Warner Bros.*, 232 F.3d 1212, 1217 (9th Cir. 2000) ("Congress did not afford architectural works full copyright protection …."). Special characteristics unique to buildings – including their habitability and overtly public function – should be taken into account by courts deciding architectural works cases.  *See*, *e.g*., *Richard J. Zitz, Inc. v. Pereira*, 232 F.3d 290, 292-93 (2d Cir. 2000) ("*Zitz* I") (resolving ambiguity in AWCPA's statutory text by relying on real-world differences between constructing a building and publishing other types of copyrightable works).

Another relevant limitation on the rights of all copyright owners is the statute of limitations which provides "[n]o civil action shall be maintained under the [Act] unless it is commenced within three years after the claim accrued".  17 U.S.C. § 507(b).  In determining whether a copyright defendant can invoke a laches defense as a bar to liability, the Supreme Court firmly established that a copyright infringement claim "accrues" "at the time the [infringing act] occurs" and, further, that "each infringing act starts a new limitations period".  *Petrella*, 134 S. Ct. at 1969.  Each alleged infringement "is actionable within three years, and only three years, of its occurrence.  And the infringer is insulated from liability for earlier

infringements of the same work". *Id.* What this means is a copyright owner has three years from the time of accrual to file suit, else his claim is barred. However, if separate acts of infringement continue to occur after the initial claim accrues, a plaintiff may sue based on those new infringements, although his or her claims are limited to what is termed a "three-year lookback" from the date a lawsuit is filed.

Under this rubric, the first question is when Park's infringement claim accrued. Shortly before the *Petrella* decision, the Second Circuit held that the discovery rule applies to copyright infringement claims, meaning those "claims do not accrue until actual or constructive discovery of the relevant infringement." *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 125 (2d Cir. 2014). As of now, in this Circuit, applying *Psihoyos* and *Petrella*, the burden is on Park to plausibly allege that he brought this action within three years of when he knew or should have known that the design and construction of 1 WTC infringed Cityfront '99. If he cannot meet that standard, he bears the burden of demonstrating an act of infringement occurring in the three years before filing suit.

There is also an issue as to whether plaintiff's allegations of infringement relating to the construction, leasing, operation and marketing of 1 WTC and accessing previously created plans of it on computers, are "acts of infringement" or "continuing infringements" of Park's alleged rights under § 106 of the Copyright Act, such that Park can take advantage of that three-year lookback. For the reasons discussed below, none of those acts are actionable for two reasons: these activities do not violate plaintiff's § 106 rights and/or they are not separate, new acts for statute of limitations purposes. The Supreme Court warned in *Petrella* that "[s]eparately accruing harm[s]" capable of triggering a new limitations period "should not be confused with harm from past violations that are continuing". *Petrella*, 134 S. Ct. at 1969 n.6. As Justice

Ginsburg explained, for a new claim to accrue, "each new act must cause 'harm [to the plaintiff] over and above the harm that the earlier acts caused'". *Id*. (citation omitted).  While sale of a copy of a book previously published or the download of a song previously released causes a new harm (and generates a new profit for the infringer), the acts on which Park relies are not new acts occurring in the lookback period causing him new harm, so these claims are untimely.

**B.    The Statute of Limitations Bars Park's Claims that the Design and Construction of 1 WTC Infringed his Copyright in Cityfront '99**

Sitting at the heart of Park's complaint are the allegations that SOM, Tishman and T1JV unlawfully copied Cityfront '99 by "designing and participating in the construction of One WTC".  *See* Counts I, III and XII.  These allegations must be dismissed as untimely because Park cannot plausibly allege that the allegedly infringing acts – *i.e.*, designing and constructing 1 WTC – occurred within the applicable three-year statute of limitations.

Under the discovery rule, it is abundantly clear that Park both knew (actual notice) or should have known (constructive notice) of the design for 1 WTC for more than a decade before filing this action on June 14, 2017.  Given the extraordinary publicity that attended the publication of the allegedly infringing design of 1 WTC in 2005 (*see* Paul Decl. ¶¶ 2, 4-5), the court can readily conclude that Park possessed actual knowledge of "infringement" at least nine years before he brought suit in June 2014.  It is inconceivable (let alone plausible) that Park, a professional architect who submitted a graduate thesis on skyscraper design (FAC ¶¶ 18-20), remained unaware of probably the most famous skyscraper project ever undertaken until almost a decade after it was publicly "unveiled" in June 2005 (*id.* ¶ 30).

Not only was the design of the building widely publicized back in June 2005 when it was

publicly unveiled, SOM registered the design in the Copyright Office on May 9, 2005.[3]  Paul

Decl., Ex. B (certificate of registration).  A "copyright registration certificate puts the world on

constructive notice of the facts stated in the certificate."  *Latin Am. Music Co. v. Spanish Broad.*

*Sys., Inc.*, 232 F. Supp. 3d 384, 389 (S.D.N.Y. 2017) (quotation marks, alterations & citation

omitted), *appeal docketed*, No. 17-1953 (2d Cir. June 21, 2017); *see also Complex Sys., Inc. v.*

*ABN Amro Bank N.V.*, 979 F. Supp. 2d 456, 472 (S.D.N.Y. 2013) (same); *Mahan v. Roc Nation,*

*LLC*, 2015 WL 1782095, at *3 (S.D.N.Y. Apr. 15, 2015) (dismissing claims filed more than

three years after defendant registered copyrights), *aff'd*, 634 F. App'x 329 (2d Cir. 2016); 17

U.S.C. § 205(c) ("Recordation of a document in the Copyright Office gives all persons

constructive notice of the facts stated in the recorded document.").

Since Park either knew or should have known about the design and construction of 1

WTC long before the three-year limitations period, his claims based on the design and

construction of 1 WTC are time-barred.  *See, e.g.*, *Zitz v. Pereira*, 119 F. Supp. 2d 133, 142

(E.D.N.Y. 1999) (*Zitz* II) (copyright claim time-barred in architectural work case because

plaintiff "first learned of [defendant's] intent to build" an allegedly infringing house more than

three years before filing action), *aff'd on other grounds*, *Richard J. Zitz, Inc. v. Pereira*, 225 F.3d

646 (2d Cir. 2000).

To try to skirt this absolute bar, without citing any specifics whatsoever, Park alleges that

the design for 1 WTC "underwent significant revisions between 2005 and its completion in

2014."  FAC ¶ 30.  That claim cannot survive even a cursory comparison of the design as

published in 2005 and the completed building (*compare* Paul Decl. Ex. C *with* FAC ¶ 4),

particularly in light of the limited similarity alleged to exist (*id.* ¶¶ 4-6), and therefore this

---

[3] The Court can take judicial notice of SOM's copyright registration for 1 WTC.  *See Island*
*Software & Computer Serv. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005).

allegation cannot survive the plausibility standard of *Iqbal*.  Alternatively, Park contends that his claims are "timely since [they were] brought within three years of the completion and opening of One WTC" on November 3, 2014.  FAC ¶ 117.  While that "opening" date conveniently falls within the three-year window, the Second Circuit has admonished against using "habitability and final completion" as the benchmark in copyright cases.  *Zitz* I, 232 F.3d at 293.  In *Zitz* I, the Court was construing a provision of the AWCPA stating that architectural works "'constructed or otherwise published before December 1, 1990' are ineligible for protection" to determine if the structure at issue in that case was covered by the Act.  232 F.3d at 292 (citing 37 C.F.R. § 202.11(d)(3)).  That architectural work was under "construction in 1990, with much of the work being done in that year".  *Id.* at 291.  The Court nonetheless found that plaintiff's copyright was invalid because construction was completed, for copyright purposes, outside of the purview of statutory protection, explaining that, "[i]f we are to understand 'constructed' as having the same significance as 'publication' for purposes of copyright protection, then … ***the equivalent of publication occurs when others can readily see – and copy – the work in question***.  On that basis, habitability and final completion seem much less significant, and whether the architectural work is substantially constructed is much closer to what Congress intended in the statute".  *Id.* at 292-93 (emphasis added).  Although *Zitz* I did not arise in the statute of limitations context, courts have applied this common-sense definition of when a building is "constructed" to copyright law in other contexts and this court should apply it here.  *See*, *e.g.*, *Sorenson v. Wolfson*, 96 F. Supp. 3d 347, 366 (S.D.N.Y. 2015) (holding that Second Circuit's "definition of 'constructed' … should also apply to the definition of 'constructed' in § 120(a)").

Under this principle, the ***latest*** time by which a plaintiff should be charged with actual or constructive notice of infringement of an architectural work is when the allegedly infringing

building has been substantially constructed.   By any measure, 1 WTC was "substantially constructed" long before the three-year limitations period began to run on June 14, 2014. Indeed, by the time construction of 1 WTC began in April of 2006, the design of the building had already been heavily publicized around the world (Paul Decl. Exs. A, C, D, E) and Park could "readily see" whatever similarities he claims exist with regard to Cityfront '99.   *Zitz* I, 232 F.3d at 293.   At the very latest, 1 WTC was "substantially constructed" when it topped out in in May 2013 with the raising of its famous spire and certainly by May 22, 2014, when all of the distinctive features of the skyscraper were completed – all dates outside the three-year limitations period.   *See* Paul Decl. Exs. F-J.   Because the correct standard is "substantial construction", the reams of articles annexed to Park's amended complaint reporting that workers were "putting the finishing touches" on 1 WTC as late as November 3, 2014 (FAC ¶ 42) and the allegation that the building "open[ed] for business on that date" (*id.* ¶ 30) are wholly irrelevant.

### C.    Park Cannot State a Claim for Copyright Infringement Based on the Acts Alleged To Have Occurred During the Three Year Lookback Period

Park's efforts to nonetheless fashion some timely new act of infringement during the three year lookback period are equally unavailing.

First, Park alleges that Tishman infringed his copyright because "construction of One WTC was still ongoing even as the building opened on November 23, 2014" (FAC ¶ 244); SOM infringed his copyright by "participating in the day-to-day work on the construction to ensure that the infringing design was implemented" (*id.* ¶ 113); and T1JV and WTC Tower 1 committed unspecified "acts of infringement within three years of Park's suit in connection with the construction of the infringing One WTC" and by "operating" the building (*id.* ¶¶ 119, 163, 164, 176); (the "Construction Allegations" – Counts I, IV, V, XII).

Second, T1JV and WTC Tower 1 are alleged to have infringed by "distributing the

infringing One WTC to the public by leasing space in One WTC" (*id.* ¶¶ 177); and Legends allegedly infringed by "providing the general public access to One WTC through the sale of tickets to One World Observatory" (*id.* ¶ 187); (the "Distribution Allegations" – Counts IV, V, VII).

Third, Park alleges, "on information and belief", that SOM and Tishman each "creat[ed] infringing copies of Cityfront '99" for example, by "loading electronic copies of drawings, plans or renderings from permanent storage into temporary memory" (*id.* ¶¶ 120, 245); WTC Tower 1 infringed by using "plans that infringe Cityfront '99 in its leasing materials"; and Legends infringed by selling "products that copy Cityfront '99, including without limitation three-dimensional figurines of One WTC," as well as logos incorporating elements of the design of 1 WTC" (*id.* ¶ 186) (the "Pictorial Allegations" – Counts I, VI, XII).

None of these so-called continuing infringements violate any of Park's exclusive copyright interests, as explained below.  In addition, all of these generalized allegations that defendants participated in unspecified acts at some point during the three-year lookback are not sufficiently specific; a copyright plaintiff must allege, *inter alia*, "by what acts during what time the defendant infringed the copyright."  *Palmer Kane LLC v. Scholastic Corp.*, 2013 WL 709276, at *2 (S.D.N.Y. Feb 27, 2013).  "Given the principle enshrined in Rule 8 – namely, to provide defendants fair notice against them – a plaintiff … may not rest on bare-bones allegations that infringement occurred…. Instead, Rule 8 requires that the alleged infringing acts be stated with some specificity.  *Id.* (quotation marks omitted); *Marvullo v. Gruner & Jahr*, 105 F. Supp. 2d 225, 230 (S.D.N.Y. 2000) ("[Copyright plaintiff] must 'set out the particular infringing acts with some specificity.  Broad, sweeping allegations of infringement do not comply with Rule 8.'") (quoting *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 n.3 (S.D.N.Y. 1992)).

4826-9061-9723v.6 0067591-000006

Plaintiff's failure to plead with the requisite specificity is itself a basis for dismissal.

### 1.      The Construction Allegations

Even if these generalized allegations had been adequately pleaded, "construction" work on a building that has already been "substantially completed" cannot be a new or a continuing act of infringement given the § 120(b) exemption that allows owners of a building to "make alterations" without violating the copyright in an architectural work.  While there is "a dearth of case law interpreting § 120(b)", it is clear that "the provision is meant to prevent a copyright owner, who holds exclusive right to prepare derivative works, from interfering with alterations to habitable architectural works".  *Javelin Invs., LLC v. McGinnis*, 2007 WL 781190, at *6 (S.D. Tex. Jan. 23, 2007).  Since the allegedly infringing structure of 1 WTC was completed by May 2014 and, as Park admits, "finishing touches" were being made as the building opened for business (FAC ¶ 42), Park cannot establish liability based on these final "alterations".

Even if Park makes the semantic argument that ongoing construction is not an "alteration", his claim is still barred because application of the § 120(b) exemption cannot depend on when a building is "finished".  As the Second Circuit warned:

> [W]e think that, with respect to buildings and houses, "finished" is a term that is hopelessly vague.  It is said that the Cathedral of Milan, started hundreds of years ago, is not yet quite finished.  And anyone who has built a house knows that the same is all too frequently true even with respect to private residences.

*Zitz* I, 232 F.3d at 292.  Applying this general principle, defendants cannot be held liable for ongoing construction work after 1 WTC was "substantially constructed".  To hold otherwise would mean that every act of basic maintenance or renovation – including replacing glass panels on the exterior 1 WTC or screwing in light fixtures – would give rise to a new action for copyright infringement.  That would completely eviscerate the statute of limitations as applied to

architectural works.  Accordingly, Park's claims based on construction and "operation"[4] of 1 WTC during the lookback period must be dismissed.

Entirely apart from this statutory exemption, the allegations relating to the ongoing construction of 1 WTC must be dismissed because they are not new acts causing independent harm.  Park's allegation that the continuation of construction work through November 2014 somehow constitutes an additional infringing act giving rise to a new limitations period confuses "separately accruing harm … with harm from past violations that are continuing".  *Petrella*, 134 S. Ct. at 1969 n.6.

### 2.    The Distribution Allegations

The Copyright Act does not give a copyright owner control over every conceivable use of his or her copyrighted work.  Rather, infringement is specifically defined (17 U.S.C. § 501) as a violation "of the exclusive rights of the copyright owner" enumerated in 17 U.S.C. § 106. "[U]nless one of those rights is infringed, the copyright holder has no recourse in law." *Elektra Entm't Grp., Inc. v. Barker*, 551 F. Supp. 2d 234, 246 (S.D.N.Y. 2008).  The leasing of commercial office space in a landmark office building and the operation of a popular tourist attraction does not violate any of Park's exclusive § 106 rights:  it is not a reproduction, distribution, or public performance of the work, and does not constitute preparation of a derivative of it.  (The owner of the copyright in an architectural work has no public display right. 17 U.S.C. § 106(5).)

Park nonetheless claims that T1JV, WTC Tower 1 and Legends have infringed his copyright because, by leasing office space in 1 WTC (FAC ¶¶ 73-89), and allowing the public to

---

[4] Although it is not clear what Park means by alleging that T1JV and WTC Tower I infringed his copyright by "operating" 1 WTC (FAC ¶ 179), there can be no liability for the general maintenance and operation of a commercial office building under § 120(b).

access the observation deck (*id.* ¶ 104), they have distributed "copies of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending".  17 U.S.C. § 106(3).  In support of that position, Park relies upon an unpublished out-of-Circuit decision holding that the owners of an apartment complex "could be susceptible for claims of direct infringement for each rental of the apartments they own".  *Looney Ricks Kiss Architects, Inc. v. Bryan*, 2010 WL 5175171, at *4 (W.D. La. Dec. 7, 2010); *see also Palmetto Builders & Designers v. UniReal, Inc.*, 342 F. Supp. 2d 468, 473 (D.S.C. 2004) (sale of infringing homes violates the distribution right under § 106(3)).  Those cases are not binding on this court and are, in any event, in the words of one copyright treatise, "utterly unfathomable".  2 *Patry on Copyright* § 3:111.  As Professor Patry explains, the distribution right does not apply to "the built structure" of architectural works "for obvious reasons:  That right involves the actual physical movement of a copy of the work ….  One can hardly distribute a material object if that object does not move." *Id.*

As a matter of both logic and statutory construction, there cannot be any infringement of Park's distribution right by leasing space, or providing public access because these transactions involve the transfer of rights to occupy defined physical space within 1 WTC, not the transfer of the physical skyscraper allegedly embodying Park's architectural work.  Simply put, section 106(3) applies to distribution of "copies … of the copyrighted work" and the alleged acts are not a distribution of the architectural work itself.  *See*, *e.g.*, *Elektra*, 551 F. Supp. 2d at 243 ("The crux of the distribution right lies in the transfer … of a copy or phonorecord ….  [A]n actual transfer must take place ….") (citation omitted).

Park's Distribution Allegations are also time-barred.  Rental income from leasing is not alleged to have been caused by the design of the building, but even if it had been, that revenue

would be harm caused by the time-barred claim regarding the design, not a new, separately accruing harm.

### 3.   The Pictorial Allegations

Park next alleges that his architectural work was infringed when: SOM and Tishman made "copies of infringing architectural drawings" (at some unspecified time) (FAC ¶ 52); 1WTC Tower "use[d] plans that infringe Cityfront '99 in its leasing materials" (*id.* ¶ 90); and Legends used "images, including the logo for the One World Observatory, that copy Cityfront '99" and produced souvenir models of 1 WTC (*id.* ¶ 188).  These claims are precluded by the AWCPA exemption for pictorial representations.

Precisely because architectural works occupy a different standing than other copyrightable works, Congress incorporated the above-quoted § 120(a) exception in the AWCPA.  1 WTC, one of the most visible buildings in New York City, patently qualifies for this statutory exemption.  The exemption clearly applies to any kind of pictorial representation of the building made during the three-year lookback, regardless of by whom made or for what purpose, because 1 WTC was "constructed" for copyright purposes in May 2014.  *See Sorenson*, 96 F. Supp. 3d at 366 (applying Second Circuit's "substantially constructed" standard to determine when building is "constructed" for § 120(a) purposes).

This AWCPA exception applies broadly to all "pictorial representations" of a constructed building, including drawings of architectural plans; graphic representations, like the 1 WTC logo; and even three-dimensional representations such as Legends' souvenir toys.[5]   Consistent with both the statutory language and purpose of the AWCPA, courts have held that the types of

---

[5] Section 101 of the Copyright Act broadly defines "pictorial, graphic and sculptural works" to "include two-dimensional *and three-dimensional* works of fine graphic and applied art, … charts, diagrams, models, and technical drawings, *including architectural plans*" (emphasis added).

copying alleged by Park are not actionable.  In *Sorenson*, "a pictorial depiction of [a] four-bedroom floorplan" was posted on a realtor's website to advertise the sale of an apartment, 96 F. Supp. 3d at 357, just as 1 WTC Tower is alleged to have used "plans that infringe Cityfront '99 in its leasing materials" (FAC ¶ 90).  Relying on this § 120(a) exception, the court ruled that "[p]osting those plans was not copyright infringement" because the allegedly infringing apartment "was substantially constructed in a building that was visible from a public place."  96 F. Supp. 3d at 365-66; *see also Morgan v. Hawthorne Homes, Inc.*, 2009 WL 101476, at *12 (W.D. Pa. Apr. 14, 2009) (rejecting argument that § 120(a) "does not apply to 'technical drawings'" and dismissing infringement claim based on copying of plans embodying architectural work).[6]  All of Park's claims based on the Pictorial Allegations must be dismissed for precisely the same reasons.

Nor can Park argue that the § 120(a) exception does not apply here because defendants – not the general public – are alleged to have reproduced and distributed the copies.  In a similar case, plaintiff argued that § 120(a) "does not protect [defendant] who, after infringing upon another's copyright by constructing a building without authorization, publishes a photograph of his infringing building."  *Builders Mut. Ins. Co. v. Donald A. Gardener Architects, Inc.*, 856 F. Supp. 2d 773, 776 (D.S.C. 2012).  The court rejected this argument because "the plain language of the statute does not limit its application to any particular individuals or usages of the photograph."  *Id*.  Simply put, "Congress … passed § 120(a) as a blanket exception", and owners of copyrighted architectural works cannot hold anybody liable for publishing pictorial representations of allegedly infringing buildings that are visible in public.  *Id*.  *See also Leicester*,

---

[6] *See also Kitchen & Bath Concepts of Pittsburgh, LLC v. Eddy Homes*, 2016 WL 7404559, at *4 (W.D. Pa. Dec. 22, 2016) (dismissing infringement claims under § 120(a) exception); *Landrau v. Solis-Betancourt*, 554 F. Supp. 2d 102, 111 (D.P.R. 2007) (same).

232 F.3d at 1219, where plaintiff claimed that Warner Bros.' infringed his architectural work – which consisted of "streetwall towers" attached to a bank building – by filming the bank building for use in a movie.  The Ninth Circuit held that, "[b]ecause the streetwall towers are part of the architectural work, § 120(a) applies" and plaintiff's copyright claim was not viable as a matter of law.  *Id.*; *see also R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 970 n.5 (4th Cir. 1999) ("[W]here an architect has a copyright in the design of a building, that right does not extend to prevent the viewing and photographing of the building, if it is located at a public site or is visible from a public place.").

Park's claim that Cityfront '99 was infringed by the loading of "electronic copies" of the design of WTC 1 "from permanent storage into temporary memory" (FAC ¶ 120) is not only an exempted "pictorial representation", it is also not a new act of infringement capable of causing separately accruing harm.  Park does not allege that new infringing designs were made within the three-year look back, rather than SOM and Tishman opened a file already on their respective computers.  The allegation that electronic files created outside the three-year window remained on those computers and then were accessed during the lookback period at best "constitutes 'harm from [a] past violation[] that [was] continuing' through [May] 2014, and not a 'new wrong' that gave rise to '[s]eparately accruing harm' within the limitations period."  *Wolf v. Travolta*, 167 F. Supp. 3d 1077, 1099 n.13 (C.D. Cal. 2016) (quoting *Petrella*, 134 S. Ct. at 1969 n.6) ("The fact that the allegedly infringing document – published … outside the relevant three-year window – *remained* on defendant's website … does not give rise to a discrete claim accruing within the three-year window."), *appeal docketed*, No. 16-55467 (9th Cir. Mar. 29, 2016).

### 4. Alternatively, the Loading of Architectural Documents into Temporary Computer Memory is a Fair Use

Even if the architectural plans of 1 WTC are not "pictorial representations" within the

AWCPA exemption, and even if accessing them from storage into temporary memory is a new infringing act, that act would be a protected fair use.  17 U.S.C. § 107.[7]  A central fallacy which permeates the amended complaint is the notion that architectural works can and should be treated no differently from other copyright-protected works for either statute of limitations or fair use purposes.  As discussed above, Congress recognized that they cannot be so treated by crafting broad exemptions and by expressly declining to extend certain enumerated rights to architectural works.  But the fair use limitation on a copyright owner's exclusive rights also operates to shield necessary and practical uses of both architectural works and architectural plans.  If architectural plans could not be electronically accessed by a building manager or a contractor renovating a house, no repairs could be made, no safety features installed, no spaces built out to tenant specifications.  Fair use exists to serve the underlying purposes of copyright law and these illustrative uses of architectural plans fit squarely within those purposes.

The first fair use factor looks at both the nature and the purpose of the use.  Whether the new work is "transformative" in either nature or purpose has become the single most important factor in the fair use analysis.  To be transformative, the use must "add[] something new, with a further purpose or different character, altering the [original] with new expression, meaning, or message," *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994).  Calling up a pre-existing architectural plan from computer memory in order to construct, modify, alter or

---

[7] As defined in the Copyright Act, fair use is measured by these four non-exclusive statutory factors:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

upgrade a building is, by its very nature, transformative.  In an analogous case, the copyright owner of photographs accessible to internet users via Google's search engine argued that "users who link to infringing websites automatically make 'cache' copies of … images and thereby directly infringe [the] reproduction right".  *Perfect 10 v. Amazon.com, Inc.*, 508 F.3d 1146, 1169 (9th Cir. 2007).[8]  The Ninth Circuit flatly rejected this argument holding that, as a matter of law, the "copying function performed automatically by a user's computer to assist in accessing the Internet is a transformative use".  *Id.  See also* 4 *Nimmer on Copyright* ("Nimmer"), § 13.05[G] ("Fair use should certainly reign supreme as to 'automatic background copying' [performed by a computer] that is not even observed by any human being.").  By that same measure, any incidental "background copying" (*id.*) that may have occurred on SOM's and/or Tishman's computers to enable the viewing of pre-existing pictures of the design of 1 WTC is highly transformative.

Addressing the remaining fair use factors, Park's design for Cityfront '99 is admittedly creative, and therefore entitled to a fair amount of copyright protection, *Campbell*, 510 U.S. at 586, but what he alleges was taken is not his design for that building, but rather some unspecified plan for some unspecified part of it,[9] and it was "taken" for purposes of computer functionality,

---

[8] Just as the process of loading files into temporary memory is a technical function enabling efficient computer use, "caching" is a technical process that enables the efficient use of the internet.  "A user's personal computer has an internal cache that saves copies of webpages and images that the user has recently viewed so that the user can more rapidly revisit these webpages and images."  *Perfect 10*, 1156 n.3.

[9] As a preliminary matter, Park alleges that the plans for 1 WTC were copies from computer memory, but he does not have a registration for his architectural plans, so his allegation – on information and belief – is that the loading of electronic copies by SOM and Tishman of unspecified plans, of unspecified parts of 1 WTC, on unspecified dates, infringe his copyright in his architectural work.  How much he alleges has been taken and whether creative or unprotectable "individual standard features" cannot be ascertained from this conclusory allegation.

21

so both the nature of the copyrighted work and the amount and substantiality of the taking favor defendants.  Park designed Cityfront '99 some eighteen years ago and no one has built it, nor has he licensed the plans for it, so there is no actual or potential market for his student project, even assuming *arguendo* that it could have been built from the plans he formulated.  It is also true that the more transformative the use, the less likely that use will have an impact on the actual or potential market for the original.  *See Davis v. Gap, Inc.*, 246 F.3d 152, 175-76 (2d Cir. 2001).  Given the highly transformative nature of the use here, there can be no impact on any theoretical market for it.[10]

For these reasons, the doctrine of fair use also insulates SOM and Tishman from any liability during the three-year lookback window.

### 5.     Alternatively, the Building Replicas are a Fair Use

One need only look at the models to see that Legends' use is also highly transformative and does not and indeed could not "supersede the object of" Park's original design for Cityfront '99.  *Campbell,* 510 U.S. at 579.  Park's work is an architectural work, intended for use in designing a building, not for model toys; the toy replica is but a vastly shrunken, plastic exterior shell of the building; it most certainly is not a building or structure which could be inhabited.  As a memento of a visit to an historic building laden with overtones of 9/11, Legends' model serves an entirely different purpose than Park's work.  In this sense, it is akin to the thumbnail images of Grateful Dead tickets and posters which were held to be a fair use in *Bill Graham Archives v. Dorling Kindersley, Ltd.*, 448 F.3d 605 (2d Cir. 2006).  While the model is commercial (which cuts against fair use under *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 562

---

[10] *See also Perfect 10*, 508 F.3d at 1169 ("Such automatic copying has no more than a minimal effect on [copyright holders'] rights, but a considerable public benefit").

22

(1985)), it is being used by Legends for a completely different purpose than Park's architectural work.   Looking at the reproductions of the pictures of souvenirs annexed to the amended complaint (FAC ¶ 93, Exs. 46-49) demonstrates that all that has been "taken" is the unprotectable idea of the geometric form of the skin of the building, not any of the architectural detail necessary to construct a building.   *See Reyher v. Children's Television Workshop*, 533 F.2d 87, 90-91 (2d Cir. 1976) (copyright does not protect ideas, only expression.)   And, in the absence of an actual building, there can be no substitutive impact on the very hypothetical market for sales of toy replicas of it.   The relevant market for derivatives is "only those that creators of original works would in general develop or license others to develop".   *Campbell*, 510 U.S. at 592.   For all of these reasons, Legends' sale of souvenir models of 1 WTC is likewise a fair use.

### D.      Park's Claims of Contributory and Vicarious Liability Fail

Counts VII through X of the complaint plead claims for contributory and vicarious copyright infringement against SOM, T1JV and WTC Tower I.   It is well established that "[t]here can be no contributory infringement absent actual infringement' … and no vicarious infringement absent direct infringement."   *Williams v. A&E TV Networks*, 122 F. Supp. 3d 157, 165 (S.D.N.Y. 2015) (quoting *Faulkner v. National Geographic Enters., Inc.*, 409 F.3d 26, 40 (2d Cir. 2005)).   For the reasons stated above, Park's claims for direct infringement fail and "[b]ecause [Park] has not plausibly alleged a claim of direct copyright infringement, [his] claims of contributory and vicarious copyright infringement must be dismissed".   *Id.*[11]

---

[11] Park has also failed to plead the necessary elements of his vicarious infringement claims. Vicarious liability arises where defendant has "the right and ability to supervise" an infringing activity and also had "an obvious and direct financial interest in the exploitation of copyrighted materials."   *Shapiro Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963). "Courts relying on this theory of third-party liability repeatedly have emphasized that some degree of control or supervision over the individual(s) directly responsible for the infringement is of crucial importance."   *Demetriades v. Demetriades*, 690 F. Supp. 289, 292 (S.D.N.Y. 1988).

## IV.   PLAINTIFF'S LANHAM ACT CLAIMS FAIL
## TO STATE CLAIMS FOR RELIEF

Counts II and III of the complaint allege false advertising and reverse passing off respectively against SOM.  Despite various efforts at creative pleading,[12] the essence of these claims is that by representing that it was the creator and designer of 1 WTC, SOM has engaged in false advertising and reverse passing off under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), since 1 WTC incorporates the architectural designs of Cityfront '99, which were designed by plaintiff.  This cannot be the basis for a claim under the Supreme Court's holding in *Dastar* and subsequent cases applying that precedent, because SOM was in fact the architect who designed and built 1 WTC, and Park only alleges to be the owner of the ideas and concepts (whether copyrightable or not) incorporated in that structure.

In *Dastar*, Fox, the owner of the rights to a television series sued under § 43(a) for reverse passing off and false advertising.  Defendant had released a video that included an edited version of that television series which was, by that time, in the public domain, and had advertised that video without referencing Fox or its underlying television series.  Because Fox could not sue for copyright infringement, it claimed that Dastar's representation that the video was its own product was a false designation of origin, namely reverse passing off, and that Dastar had falsely

---

The amended complaint does not even try to explain how any of SOM, T1JV and WTC Tower 1 could have had the right and ability to control any of the others, given their alleged respective roles with respect to 1 WTC.

[12] Plaintiff alleges the following iterations of that essential claim:  SOM "takes credit for designing 1 WTC" (FAC ¶ 3); SOM has heavily publicized its works on 1 WTC and presents itself and Childs as designers of it (*id.* ¶ 60); SOM has never credited Park as designer (*id.* ¶ 63); SOM profited from the credit it has falsely claimed (*id.* ¶ 66); SOM has advertised that it designed 1 WTC in advertising its architectural services (*id.* ¶ 127); SOM falsely led consumers to believe its architectural services had a creative quality that, enabled it to come up with the One WTC design (*id.* ¶ 131); SOM began advertising its claim to be the designer of 1 WTC on its Internet website in the fall of 2014 (*id.* ¶ 61);  and SOM "falsely designated the origin of the underlying architectural services" (*id.* ¶ 143).

advertised the product as "produced and distributed by" Dastar.

Justice Scalia, writing for the Court, rejected the claim, squarely holding that false designations of origin under the Lanham Act must pertain to the origin of the physical product, not the communicative ideas incorporated in it.  Since Dastar was the origin of the video, and Fox the origin of creative ideas incorporated in it, no claim would lie under § 43(a).  In parsing the definition of "origin" under the statute, the Court said:  "the phrase 'origin of goods' is in our view incapable of connoting the person or entity that originated the ideas or communications that 'goods' embody or contain.  Such an extension would not only stretch the text, but would be out of accord with the history and purpose of the Lanham Act and inconsistent with precedent".  539 U.S. at 32.  Further, "in construing the Lanham Act, we have been 'careful to caution against misuse or over-extension' of trademark and related protections into areas traditionally occupied by patent or copyright".  *Id.* at 34 (citing *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29 (2001)).

### A.     Reverse Passing Off

For his reverse passing off claim, plaintiff alleges in various guises that SOM has falsely designated the origin 1 WTC by claiming to be the origin of the underlying architectural services.  *See supra*, 24 n.12.  These allegations consist of no more than the bootstrap allegation that SOM falsely claimed that it designed the physical building (which it in fact designed), because the building copies Park's design.  That claim is precluded under *Dastar*.

That a false designation of copyright ownership is, standing alone, insufficient to predicate a claim under § 43(a) for reverse passing off was recognized by the Second Circuit even prior to *Dastar* in *Lipton v. The Nature Co.*, 71 F.3d 464 (2d Cir. 1995).  There, the Court laid out the requirements for a reverse passing off claim in this Circuit as follows:

A successful claim for "reverse passing off" under the Lanham Act requires that the plaintiff prove (1) that the work at issue originated with the plaintiff; (2) that origin of the work was falsely designated by the defendant; (3) that the false designation of origin was likely to cause consumer confusion; and (4) that the plaintiff was harmed by the defendant's false designation of origin.

*Id.* at 473 (citing *Waldman Publ'g Corp. v. Landoll, Inc.*, 43 F.3d 775, 781-85 (2d Cir. 1994)). The *Lipton* Court rejected the claim that defendant violated the Lanham Act by falsely claiming he was the copyright owner of the content of a calendar of animal terms of venery.  Numerous cases since that time in this Circuit and elsewhere, following *Lipton* and then *Dastar*, have dismissed similar claims.  *See*, *e.g.*, *Antidote Int'l Films, Inc. v. Bloomsbury Publ'g, PLC*, 467 F. Supp. 2d 394 (S.D.N.Y. 2006) (alleged misrepresentations as to authorship of a novel and to the effect that the novel was semi-autobiographical could not withstand *Dastar* because defendant was in fact the origin of the physical books that contained the alleged misrepresentations); *Enzo Biochem, Inc. v. Amersham PLC*, 981 F. Supp. 2d 217 (S.D.N.Y. 2013) (rejecting, *inter alia*, claims for unfair competition under § 43(a) on the grounds that claim that defendant was the origin of the goods in question, notwithstanding plaintiff's claim to be the author of the concepts embodied in them); *Wellnx Life Sciences Inc. v. Iovate Health Sciences Research Inc.*, 516 F. Supp. 2d 270 (S.D.N.Y. 2007) (rejecting reverse passing off claims under *Dastar* concerning allegations of publication of a work without proper attribution to its creative source).

This principle has been directly applied to cases involving architectural plans and architectural works.  *See*, *e.g.*, *Blade Room Grp. Ltd. v. Facebook, Inc.*, 219 F. Supp. 3d 984, 993-94 (N.D. Cal. 2017) (rejecting, under *Dastar*, § 43(a) claim based on false designation of the design for data centers); *Logan Developers, Inc. v. Heritage Bldgs., Inc.*, 2013 WL 5460757 (E.D.N.C. Sept. 30, 2013) (dismissing under *Dastar* § 43 reverse passing off claim for false designation of architectural plans where defendant is alleged to have copied plaintiff's completed design plans for residential home by incorporating plaintiff's intangible ideas into its own plan

4826-9061-9723v.6 0067591-000006

and "physical good," *i.e.*, the home, which it sold); *Larkin Grp., Inc. v. Aquatic Design Consultants, Inc.*, 323 F. Supp. 2d 1121 (D. Kan. 2004) (rejecting reverse passing off claim based on alleged use of plaintiff's architectural designs in defendant's proposals; calling design proposals "tangible goods" under *Dastar*); *Arthur Ruttenberg Homes, Inc. v. Brentwood Custom Homes, Inc.*, No. 6:05-CV-1350-Orl-22 DAB (M.D. Fla. Feb. 2, 2006) (same) (Paul Decl. Ex. K); *Beckwith Buildings, Inc. v. Depietri*, 2006 WL 264518 at *4 (D.N.H. Sept. 15, 2006) (rejecting reverse passing off claim under *Dastar* based on defendant posting plan for a home on its website, distributing plan to real estate agents and prospective customers, and "passing off" house built from those plans as defendant's work; because signs in front of that house accurately identified those who physically produced that tangible object, the facts alleged … fail to say the claim of false designation of origin under the Lanham Act.").[13]

## B.    False Advertising

Plaintiff also pleads a claim against SOM for false advertising under 15 U.S.C. § 1125(a)(1)(B), which provides:

> Any person who, on or in connection with any goods or services … uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which … in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

---

[13] Plaintiff extensively references SOM's allegations in an action which SOM settled prior to the Seventh Circuit decision in *Gensler v. Strabala*, 764 F.3d 735 (7th Cir. 2014).  *See* FAC ¶¶ 128, 129, 144, 145.  Not only was SOM not a party to that action at the time of that decision but defendant there was not alleged to have made or sold copies of Gensler's plans and drawings, whereas Park alleges that SOM has made copies of Park's plans and drawings here (*id.* ¶¶ 114, 120, 244), and defendant claimed to have been the designer of a series of buildings, rather than the designer of a single building as in issue here.  In any event, the Seventh Circuit expressed skepticism about Gensler's claim, 764 F.3d at 737-39, and its decision is not binding upon this court.

4826-9061-9723v.6 0067591-000006

This false advertising claim fails for the same reasons that the reverse passing off claim fails.   In *Dastar*, plaintiff pleaded both reverse passing off and false advertising claims and Justice Scalia made no distinction between them for these purposes.   Applying *Dastar*, since SOM is the origin of the architectural designs incorporated in 1 WTC, there is no falsity.   *See Antidote Int'l*, 467 F. Supp. 2d at 399-400 (rejecting argument that suggestion in *Dastar* that if defendant had substantially copied the public domain video and, in commercial advertising and promotion, given purchasers the impression that that video was very different from the public domain work, when it was not, there might be a claim because:   "While this language might be read to suggest that the Supreme Court was leaving open the possibility of a claim arising from a misrepresentation going to the substance of a work, rather than the work's authorship, in the instant case, with respect to claims that sound in false authorship, the holding in *Dastar* that the word 'origin' in § 43(a)(1)(A) refers to producers, rather than authors, necessarily implies that the words 'nature, characteristics, [and] qualities' in § 43(a)(1)(B) cannot be read to refer to authorship.   If authorship were a 'characteristic[ ]' or 'qualit[y]' of a work, then the very claim *Dastar* rejected under § 43(a)(1)(A) would have been available under § 43(a)(1)(B)").   *See also Zuma Press, Inc. v. Getty Images (U.S.) Inc.*, 2017 WL 2829517 (S.D.N.Y. June 29, 2017) (false advertising claim under § 43(2)(1)(B) dismissed as predicated only on removal of attribution credit).

### V.   PLAINTIFF'S DMCA CLAIM FAILS TO STATE A CLAIM FOR RELIEF

Last in his sundry efforts to circumvent the statute of limitations, plaintiff pleads that SOM violated the DMCA, 17 U.S.C. § 1202(a), by "knowingly and with the intent to induce, enable, facilitate or conceal infringement, provided and continues to provide [false] copyright management information".   FAC ¶ 229.

This claim is logically fallacious because there is and can be no allegation that 1 WTC *is* Park's copyrighted work.  An "architectural work" is statutorily defined as:  "the design of a building … includ[ing] the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features".  17 U.S.C. § 101. All that Park has alleged is that 1 WTC is an unauthorized derivative of Cityfront '99 because of the copying of the overall form or skin of the building.  FAC ¶¶ 4, 5.  He does not and cannot allege that he is the author of that derivative.  The "author" of a work is generally the "party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection".  *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989).

Because Park does not claim to be the "author" of 1 WTC itself, there is no "false" copyright management information on the photos displaying that building and no violation of § 1202(a).  *See Faulkner Press, L.L.C. v. Class Notes, L.L.C.*, 756 F. Supp. 2d 1352, 1359-60 (N.D. Fla. 2010) ("Class Notes did not add false copyright management information in violation of the DMCA by printing [its own copyright notice] on its note packages.  The note packages that Class Notes produced were a different product from [defendant's] work even if, as Faulkner Press alleges, they included materials from [defendant's] work.  No alteration was made to [defendant's] product or original work, so there was no violation of the DMCA by printing [defendant's copyright notice] on the note packages.").  As Professor Nimmer notes, the key point in *Faulkner* is that defendant did not alter any product originating from plaintiff, but rather produced its own product which it duly marked.  4 *Nimmer*, § 12(a).10 [C][1], p.12A-202 n.140. A review of the cases under § 1202(a) shows that *Faulkner* appears to be the only case that addresses the question of whether in a violation of this statute can be based on a work which is

not an exact copy of plaintiff's work.[14]  That makes sense because if that were not the case, as

this court noted, *every* claim of copyright infringement would also *ipso facto* be a claim for

violation of the DMCA.  Once again, that is not the law.[15]

## CONCLUSION

For the foregoing reasons, the complaint fails to state a claim for relief and it should be

dismissed in its entirety, and defendant[s] should be awarded prevailing party attorneys' fees and

costs pursuant to 17 U.S.C. § 505 and 15 U.S.C. § 1117(a).

Dated:  New York, New York
        September 8, 2017

Respectfully submitted,

**DAVIS WRIGHT TREMAINE LLP**

By: *s/ Marcia B. Paul*

Marcia B. Paul
John M. Browning

---

[14] *But see Zalewski v. Cicero Builder Dev. Inc.*, 754 F.3d 95, 107 (2d Cir. 2014) (dismissing § 1202 claim based on allegedly infringing plans on the grounds that it was never adequately alleged, without addressing issue of falsity); *Thomas M. Gilbert Architects, P.C. v. Accent Builders & Developers LLC*, 629 F. Supp. 2d 526 (E.D. Va. 2008) (court denied summary judgment because of the absence of evidence of intent to induce, enable, facilitate or conceal infringement without addressing the issue of falsity), *aff'd*, 377 F. App'x 303 (4th Cir. 2010).

[15] Plaintiff's amended complaint alleges that SOM provided false copyright management information on its website (FAC ¶ 229) but, as explained above, that generalized allegation is deficient.  In the absence of electronic commerce, there can be no claim under § 1201(2).  *See IQ Grp. Ltd. v. Wiesner Publ'g, LLC*, 409 F. Supp. 2d 587 (D.N.J. 2006); *Textile Secrets Int'l, Inc. v. Ya-Ya Brand Inc.*, 524 F. Supp. 2d 1184 (C.D. Cal. 2007) (requirement that false copyright information be placed in electronic commerce or automated copyright protection or management systems); *Brown v. Stroud*, 2011 WL 2600661, at *5 (N.D. Cal. June 30, 2011) (same).  This is consistent with the purpose of this section of the DMCA, namely to bring the United States in compliance with WIPO Article 12(1) which specifically refers to the removal or alteration of "*electronic* rights management information".  *But see Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 306 (S.D.N.Y. 2011) (statute not limited on its face to e-commerce).  *Nimmer* concludes that whether § 1202 applies in the absence of an automated system is an open question.  4 *Nimmer*, § 12(a).10 [C][2], p.12A-207.

30

1251 Avenue of the Americas
21st Floor
New York, NY 10020
(212) 603-6473
E-mail:   marciapaul@dwt.com
          jackbrowning@dwt.com

*Attorneys for Defendants Skidmore, Owings
& Merrill LLP, Tower 1 Joint Venture LLC, WTC
Tower 1 LLC, Tishman Construction Corp., and
Legends OWO, LLC*

31